## UTTER v. INTERNATIONAL PAPER CO.

(Supreme Court, Appellate Division, Fourth Department. November 17, 1909.)

MASTER AND SERVANT (§ 108*)—INJURY TO SERVANT—NEGLIGENCE—MACHINERY.

Connected with a machine in a paper manufacturing establishment was a small perforated steam pipe, for steaming the paper. It was intended to carry only a pressure of 4 or 5 pounds to the square inch, as more would wet the paper too much. In the end of it was a wooden plug, sufficient to withstand the pressure, and which had served its purpose without accident for five years. Such pipe was connected with a large pipe carrying a pressure of 100 pounds to the square inch. Steam was properly let from the large pipe into the small pipe at the proper pressure by first turning a valve in the large pipe, and then turning the proper amount a valve in the end of the small pipe. A workman was injured by another employé by mistake opening the valve in the large pipe and turning on the steam, when the valve at the end of the small pipe was wide open, thus letting in the full pressure and blowing out the plug. Held, that the master was not negligent in not having, instead of the plug, a cap on the end of the small pipe to withstand the full pressure, and so was not liable for the accident.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 203; Dec. Dig. § 108.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, Jefferson County.

Action by Alvaro J. Utter against the International Paper Company. From a judgment on a verdict for plaintiff, and from an order denying a motion for a new trial made on the minutes, defendant appeals. Reversed, and new trial ordered.

The action was commenced on the 27th day of January, 1906, to recover damages for injuries sustained by the plaintiff, alleged to have been caused solely through the negligence of the defendant.

Argued before McLENNAN, P. J., and SPRING, KRUSE, and ROBSON, JJ.

Francis K. Purcell, for appellant.
Francis P. Burns, for respondent.

McLENNAN, P. J. None of the material facts in this case are in dispute and the important question presented by this appeal is: Do such facts tend to establish actionable negligence as against the defendant?

At all the times mentioned the defendant was a domestic corporation, engaged in manufacturing paper. It operated one paper mill or plant at Glen Park, in the county of Jefferson, and another at Niagara Falls. In the paper mill at Niagara Falls there was a paper machine known as and called in the evidence "machine No. 3." The accident occurred on the 18th day of November, 1908, at about 3:30 a. m., from the blowing out of a wooden plug, which had been inserted in the end of a small steam pipe, which was located at what is called the "wet end" of the machine. At the time of the accident the plaintiff was 43 years of age. He had been a paper maker, engaged in various capacities in the operation of paper mills, for 20 years, and had been engaged in defendant's paper mill located at Glen Park as machine tender for 12 years previous to the 8th day of November prior to the accident, when he was transferred to its mill at Niagara Falls, where he occupied the same position and operated the machine No. 3. By reason of his position as "machine tender" the plaintiff had charge of this machine. There were employed to work upon it three other men, known, respectively, as "back tender," "winder man," and "fourth hand," all of whom were subordinates of and subject to the orders of plaintiff.

The parts of the machine involved are very simple in construction. At the wet end of the machine, so called, there is a skeleton roll, covered with wire cloth, about 8 or 10 inches in diameter, called a "dandy," extending entirely across the end of the machine. Its purpose is to smooth and finish the sheet of paper as it passes over it after leaving the wet end of the machine. As the paper passes over the "dandy," it is necessary that a small quantity of steam should be forced upon it, and to accomplish that purpose a perforated steam pipe from 1 to 1¾ inches in diameter extended across the machine in front of the "dandy" and about 4 inches from it, so that when the machine was in operation there would be a fine spray of steam playing continuously on the sheet of paper as it passed over the "dandy." The end of this perforated pipe was stopped by a wooden plug about 8½ inches long, extended into the pipe 4½ inches and was wet and swollen from steam and water. A

main steam pipe, which carried a steam pressure of 100 pounds to the square inch, was connected with the small perforated pipe. On such main pipe there was a valve which, if turned off, prevented any steam from passing into the perforated pipe, which was only intended to carry a pressure of 4 or 5 pounds to the square inch. In fact, a greater pressure of steam in the perforated pipe would cause the steam to strike the paper with too much force, and would injure it. The steam was let into the perforated pipe from the main pipe by means of another valve, called in the evidence "valve No. 1." That was located at the end of the perforated pipe next to the main pipe, so that, when valve No. 1 was shut off, no steam could pass from the main pipe into the perforated pipe, and the amount of steam which would pass into it was regulated by such valve, and, as before said, when the valve in the main pipe was shut off, no steam could pass into the perforated pipe, regardless of whether valve No. 1 was closed or open. These two valves were in charge of and were controlled by an employé by the name of Theisen, who was known as the back tender, and the two valves were close together, and could be reached by him from his place of work, and opened or closed at will.

On the day in question it became necessary to remove the "dandy" in order to clean it, and the plaintiff and Theisen removed and cleaned the "dandy." In preparing for its removal, Theisen closed the valve No. 1 in order to prevent steam from passing into the perforated pipe. He discovered that there was a slight leakage of steam into the perforated pipe from the main pipe, and he thereupon closed valve No. 2, which prevented any steam from passing into the perforated pipe or through valve No. 1. When the "dandy" had been cleaned, and again placed in position in the machine, and adjusted, Theisen, the back tender, inquired of the plaintiff if it was all right, and, being assured that it was, he first opened valve No. 1, and discovered that no steam passed into the perforated pipe; the reason being that he had previously closed valve No. 2 on the main pipe. Theisen thereupon opened valve No. 2 without closing valve No. 1, which let the full head of steam onto the perforated pipe, blowing the plug out of the end of the pipe, and causing the steam and hot water to escape and scald the plaintiff. The proper method of turning the steam on, as Theisen well knew, because he was an experienced, capable man, was to close valve No. 1, then to open valve No. 2, then to open valve No. 1 sufficiently to let the desired amount of steam into the perforated pipe, to wit, at a pressure of 4 or 5 pounds to the square inch. If this had been done, it is practically conceded that no accident would have occurred, because there is no evidence which tends to show that 4 or 5 pounds pressure would blow out the plug which was in the perforated pipe.

The cause of the accident is fully explained by Theisen, the back tender. He testifies, in substance, that he forgot to close valve No. 1 before opening valve No. 2, and that he gave valve No. 2 a full turn, and as a consequence a great amount of steam was let into the pipe, which caused the accident. The only cause of negligence charged against the defendant is that it failed in the performance of its duty by plugging the end of the perforated pipe with a wooden plug, and that as a result he was not furnished with a safe place in which to

work; that the perforated pipe should have been provided with a brass or an iron cap, or an elbow with hose attachment.

It was proven that the machine was of standard make, although made many years before the accident; also that the wooden plug had been used in the perforated pipe precisely as on the day in question for at least five years prior to the accident, and that it had never blown out, or any accident occurred. There is evidence tending to show that the use of a cap or an elbow with a hose attachment is a safer method of securing the end of such a pipe, and also that such pipes, in modern paper machines, are furnished with such appliances. But it is nowhere suggested in the evidence that if only the amount of steam which was necessary and required had been let into the perforated pipe, to wit, a pressure of 4 or 5 pounds to the square inch, the plug would have blown out, or that with such pressure it would not have performed the function intended, precisely as it had done for the five years previous. Practically the complaint of the plaintiff is that the defendant did not furnish a perforated pipe with such appliances as would stand a steam pressure of 100 pounds to the square inch, when such perforated pipe was only designed and calculated to stand a pressure of 4 or 5 pounds to the square inch. If the pressure of steam from the main pipe had been turned onto this pipe, which was perforated by holes and intended to withstand a very slight pressure, the chances are that some other portion of the pipe would have exploded. The cap or elbow, with hose attachment, which is used upon a modern paper machine, is not so used for the purpose of withstanding a pressure such as would come from turning on the steam from the main pipe, but to provide a means of escape of steam which had condensed into water, which the evidence tends to show had a tendency to injure the paper which was passing over the "dandy."

We think there is no basis for the finding of the jury that the defendant was negligent because it failed to furnish a perforated pipe with such attachments as would stand a pressure of 100 pounds to the square inch, when it was only intended that 4 or 5 pounds to the square inch would be all the pressure to which such perforated pipe would be subjected. The accident occurred, not because the plug was not inserted in such manner as to withstand the steam pressure intended to be applied to the perforated pipe, but because that pressure, through the mistake and forgetfulness of the back tender, was increased 20-fold. For such mistake the defendant is not liable. The situation which is presented in this case exists practically in every factory where steam is used. The main pipe, which carries the steam to all parts of the building, is so constructed as to withstand a very great pressure. By means of valves a smaller quantity, and in some cases a very small amount, is taken from the main pipe to operate various machines, or different parts of a machine. If an experienced workman, by mistake, turns the full head of steam from the main pipe into a small, or perhaps frail, machine, yet suitable and safe for the work intended, and it explodes and injures another workman, the defendant is not liable.

It is unnecessary to refer to or discuss the authorities cited by the respective counsel. A pipe with a wooden plug in the end had performed the work required of it for five years or more safely and with-

out accident. It was only designed to withstand a pressure of 4 or 5 pounds to the square inch. It was of sufficient strength, and the plug was arranged so as to withstand such pressure. A co-employé of the plaintiff subjected such pipe to a pressure of 100 pounds, by mistake, without reason, without excuse, and when such pressure of steam would have destroyed the paper which was being manufactured. We think the defendant not liable for the negligent or forgetful act of such co-employé. We conclude that the evidence fails to tend to establish actionable negligence on the part of the defendant.

Having reached such conclusion, it is unnecessary to consider any of the other questions presented upon this appeal. The judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event.

Judgment and order reversed, and new trial ordered, with costs to appellant to abide event. All concur; WILLIAMS, J., not sitting.